UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------

WILLIAM WILLIS, : CASE NO. 1:14-CV-2262
:
        Plaintiff, :
:
vs. : OPINION & ORDER
:
CLEVELAND HEIGHTS POLICE :
DEPARTMENT, *et al*., :
:
        Defendants. :

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff William Willis filed this *pro se* damages action under 42 U.S.C. §§1983 and 2000e against Cleveland Heights Police Chief J.E. Robertson, Cleveland Heights Law Director Jim Juliano, Police Sergeant Jason Moze, Kaiser Permanente, Charles Celestina (a nurse employed by Kaiser Permanente), and Jennita L. Morgan. For the reasons stated below, the action is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

**Standard of Review**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), 28 U.S.C. § 1915(e)(2)(B) requires a district court to dismiss *sua sponte* any *in forma pauperis* action the court determines is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Hill v. Lappin*, 630 F.3d 468,

471 (6th Cir. 2010). In order to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2)(B), a complaint must contain sufficient factual matter, accepted as true, to state claim to relief that is plausible on its face. *Id*. (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals under 28 U.S.C. §1915(e)(2)(B)). The plaintiff's "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. In determining whether a complaint is subject to dismissal, the court construes the complaint in the light most favorable to the plaintiff and accepts well-pleaded factual allegations as true. *See Arrow v. Federal Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004). The court need not, however, accept legal conclusions or unwarranted factual inferences. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

**Allegations**

The plaintiff alleges that on October 10, 2013, he awoke from "a sleep nightmare" and decided to go to the emergency room at Kaiser Permanente for an HIV test. He was worried because he had unprotected sex with Jennita Morgan, a prostitute who tested positive for HIV. (Complt., ¶¶11, 19.) He alleges he is a person with a disability and was forced to walk to Kaiser Permanente using his walking cane because he noticed his Jeep was not where he parked it when he left his CMHA apartment at 25 Severance Circle. (*Id*., ¶¶16-17.)

When he arrived at Kaiser Permanente, he was seen by an intake nurse, Defendant Charles Celestina. Celestina asked him "all types of personal questions about [his] sex life," to which he responded. (*Id*., ¶19.) While he was waiting in the emergency care area for an HIV

-2-

test, Celestina allegedly "called the Cleveland Heights Police Department because [Defendant] Jennita L. Morgan receives cough syrup from Kaiser Permanente [and] is a regular patient there."  (*Id*., ¶26.)  He alleges two Cleveland Heights police officers, Defendant Sergeant Moze and Officer Martin Block, suddenly pulled back the curtain from where he was waiting in the emergency room and handcuffed and arrested him "for leaving Jennita L. Morgan in the City of South Euclid, Ohio" earlier that day.  (*Id*., ¶25.)  The officers escorted him to a police car.  Officer Block asked him if he wanted to walk to the car with his cane because he could see the plaintiff "walk[ed] with a limp."  (*Id*., ¶29.)  The plaintiff replied "no" because he did "not want[] anyone to say that [he] had a weapon," but he thanked Officer Block for "recognizing [his] walking disability."  (*Id*.)

  The plaintiff alleges he told both officers he would have a difficult time getting into the back seat of a police car because of his "personal medical condition of paralysis within both of his legs," (*id*., ¶30), but he does not allege he actually had trouble getting into the car.  He was placed in a car driven by Sergeant Moze.  The plaintiff does not contest the propriety of his arrest.  He alleges Sergeant Moze violated his rights because he did not take him straight to the police station at 40 Severance Circle Drive in Cleveland Heights for booking as he expected Sergaent Moze would do.  Rather, Sergeant Moze turned into the parking lot of his apartment building, got out of the car, opened the driver side back seat where the plaintiff was sitting, and asked the plaintiff what he had in his pockets.  (*Id*., ¶37, 42.)  The plaintiff alleges this conduct by Sergaent Moze violated his Fourth Amendment rights.  He alleges he stated to Sergaent Moze: "I had thoughts you were arresting me and we were going straight to the Cleveland Heights Police Headquarters and this action is [a] violation of due process with racial profiling

act of 2011."  (*Id*., ¶43.)

In addition, the plaintiff alleges Sergeant Moze used excessive force against him.  He alleges Sergeant Moze

> reached and physically grabbed me while I was sitting with the back-seat of his police patrol car; I the arrestee [am] an American person with disabilities [and] had surgery of osteochondroma with spinal cord decompression and tumor causing paralysis the spasticity decreased co-ordination in both legs.

(*Id*., ¶44.)

He further alleges Sergeant Moze "forcefully mov[ed his] body into positions w[h]ere [his] 7th to 13th vertebral spinal fusion would not allow his body to participate" and that, as a result of the "twisting, entangling, and forcefully abusive tactics [he] had sharp like pains . . . felt along my back, right shoulder all the way to my right hand fingers" arising from a bone crepitus injury.  (*Id*., ¶45.)

He alleges he yelled out to Sergeant Moze that he was hurting him.  He does not allege Sergeant Moze continued to search or hurt him after this point.  Rather, he alleges Sergeant Moze "stopped entangling me," took his personal keys away from him, and then transported him to the police station where Officer Martin was waiting to book him.  (*Id*., ¶¶46-50.)  Public records, of which the Court takes judicial notice, indicate the plaintiff was charged with kidnapping, abduction, aggravated assault, domestic violence, and aggravated menacing.  *See State of Ohio v. Williams L. Willis*, CR 13 579081-A (Cuyahoga County Court of Common Pleas).

In addition to these allegations, the plaintiff alleges his "apartment has been robbed" and that "Sergeant Moze and Jennita Morgan [were] in cahoots and complicity."  (*Id*., ¶51B.)  He

refers to a report he and his daughter filed with the CMHA police in December 2013, in which they reported that Jennita Morgan, the plaintiff's "non-live in girlfriend," had the keys to his apartment while he was incarcerated and that several items in the apartment were missing.

The plaintiff alleges three claims for relief.  His first claim is against Kaiser Permanente and Charles Celestina for "discrimination" under 42 U.S.C. §§1983 and 2000e.  In this claim, the plaintiff alleges that the actions of intake nurse Celestina "were premeditated Racial Profiling Act of 2011," "malicious harassment and . . . neglect of duty with deliberate indifference and lack of professional courtesy."  (*Id*., ¶52.)

His second claim is against Sergeant Moze in his individual and official capacities under §1983.  He contends Sergeant Moze violated his constitutional rights and committed an illegal search and seizure because he did not take the plaintiff directly to police headquarters, but instead, stopped and searched him prior to the station.  (*Id*., ¶53.)  His third claim alleges Moze violated his constitutional rights by using excessive force against him while searching him and taking his keys.

**Analysis**

The plaintiff's complaint fails to state a plausible claim on which relief may granted in this case.

The complaint fails to state any plausible claim against Kaiser Permanente and Charles Celestina.  In order to state a claim under 42 U.S.C. §1983, a plaintiff must show that he suffered a deprivation of a right secured by the Constitution or laws of the United States by a person acting "under color of" state law.  *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).  "A plaintiff may not proceed under §1983 against a private party no matter how discriminatory

or wrongful the party's conduct." *Id*. (internal citation omitted).  There is no allegation in the plaintiff's complaint suggesting that Kaiser Permanente and Nurse Celestina are state actors or acted under "color of" state law.  Accordingly, the plaintiff has no remedy against these defendants under §1983, even if his complaint plausibly suggests they engaged in some kind of discriminatory conduct.

The plaintiff likewise has no claim against Kaiser Permanente and Celestina under Title VII of the Civil Rights Act of 1964, which prohibits discriminatory employment practices.  *See* 42 U.S.C. §2000e-2 (proscribing unlawful employment practices by employers).  The plaintiff does not allege Celestina or Kaiser Permanente discriminated against him in the employment context.

The plaintiff's complaint also does not allege any cognizable claim against the Cleveland Heights Police Chief J.E.Robertson or Law Director Jim Juliano.  The Sixth Circuit has consistently held that "damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must . . . allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right." *Terrance v. Northville Reg.Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (emphasis in original).  In addition, liability may not be imposed on a government official under §1983 on the basis of *respondeat superior* alone.  *Iqbal*, 556 U.S. at 676.  To state a claim against a government official, a plaintiff must demonstrate that the official, "through the individual's own actions, has violated the Constitution." *Id.*   The plaintiff does not allege any conduct in his complaint – unconstitutional or otherwise – engaged in by Police Chief Robertson or Law

Director Juliano. Accordingly, the plaintiff has not alleged facts sufficient to hold these defendants liable under §1983.

The plaintiff has not alleged a plausible claim against Jennita Morgan. The plaintiff alleges Morgan robbed his apartment, but he does not allege any legal cause of action against her in his complaint. To the extent he purports to allege she violated his rights under §1983, he fails to state a claim because he does not allege facts plausibly suggesting she is a state actor. His vague and conclusory allegation that Morgan acted "in cahoots" with Sergeant Moze is insufficient to demonstrate state action.

Finally, the plaintiff's allegations are insufficient to allege a plausible claim on which relief may be granted against Sergeant Moze. As noted above, the plaintiff does not challenge the legality of his arrest by Sergeant Moze and Officer Block. He alleges only that Sergeant Moze violated his constitutional rights by (1) failing to take him straight to the police station after arresting him and (2) subjecting him to excessive force when searching him. The plaintiff's complaint is insufficient to state a plausible constitutional claim in either regard.

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (1973).

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.'

*Id.* at 226, quoting *Chimel v. California*, 395 U.S. 752, 762–63 (1969). Thus, Officer Moze was

permitted to search the plaintiff incident to his arrest. The Fourth Amendment does not guarantee that an arrestee will be transported directly to the police station.

In addition, although the use of excessive force by law enforcement officials in effectuating an arrest can form the basis of a claim under the Fourth Amendment, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" is sufficient to make out a constitutional claim. *See* Bass v. Robinson, 167 F.3d 1041, 1045 (6th Cir. 1999). Whether a police officer has used excessive force is assessed under an objective reasonableness standard in light of all of the circumstances of the particular case, including the severity of the criminal conduct at issue, whether the suspect posed an immediate threat to the safety of the public and the officer, and whether the suspect was actively resisting arrest. Graham v. Connor, 490 U.S. 386, 396-97 (1989). The factors are considered from the perspective of a reasonable officer on the scene, who is often forced to make quick judgments under rapidly evolving and tense circumstances. *Id*. at 397.

The plaintiff alleges in purely conclusory terms that Sergaeant Moze used "abusive tactics," and engaged in excessive force against him when he searched him, but the only basis the plaintiff alleges to support these conclusions is that Sergaent Moze forcefully "moved," "twisted," and "entangled" the plaintiff's body into positions that hurt him because of various and unclear medical and health conditions from which he suffered. The plaintiff does not allege facts suggesting Moze's conduct would have hurt an ordinary person under the circumstances or that Moze was aware that the plaintiff had conditions that caused him to experience pain under the circumstances. In fact, the plaintiff's allegations indicate Moze "stopped entangling" him

after he yelled Moze was hurting him. (*See* Compt., ¶¶ 46-47.)[1] In sum, even according the plaintiff's complaint a liberal construction, the Court does not find the plaintiff's allegations – that Moze forcefully "moved," "twisted," and "entangled" his body into positions that hurt him – sufficient to support a plausible claim that Moze used unreasonable excessive force against him in violation of the Fourth Amendment.

## Conclusion

For all of the reasons stated above, the plaintiff's complaint fails to state a claim on which relief may be granted in this case, and the action is dismissed pursuant to 28 U.S.C. §1915(e)(2)(B). The plaintiff's application to proceed *in forma pauperis* (Doc. No. 2) is granted. The Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


Dated: May 6, 2015                            *s/        James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE

---

[1] In addition, the medical records the plaintiff attaches to his complaint indicate the plaintiff had experienced the same kind of sharp like pains he alleged he felt during the search for two weeks prior to his arrest. (*See* Doc. No. 1-4 at p. 3.)